**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**ROBERT LEWIS**,

Plaintiff,

v. Case No. 8:24-cv-00402-WFJ-SPF

**TEGNA, INC.**, and
**TEGNA EAST COAST**
**BROADCASTING, LLC**,

Defendants.

_________________________________/

**ORDER**

Before the Court is Tegna East Coast Broadcasting, LLC's ("Tegna East Coast") and Tegna, Inc.'s (collectively, "Defendants") Motion to Dismiss (Dkt. 14) Robert Lewis's ("Plaintiff") Complaint (Dkt. 1). Plaintiff filed a Response (Dkt. 20). Upon careful consideration, the Court denies Defendants' Motion.

**LEGAL STANDARD**

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While "detailed factual

allegations" are not required, "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action'" cannot suffice. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In considering the motion, the Court must accept all factual allegations of the complaint as true and construe them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008) (citation omitted). The Court should limit its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citations omitted).

**BACKGROUND**

Beginning in 2012, Plaintiff was employed as a journalist at WTSP Channel 10 ("Channel 10"). Dkt. 1 ¶ 14. Channel 10—a television station located in Pinellas County, Florida and broadcasting throughout the Tampa Bay area—is owned by Tegna, Inc.. *Id.* ¶ 11. Tegna East Coast operates Channel 10 under the management and direction of Tegna, Inc. officers and employees. *Id.* ¶ 12. Plaintiff asserts that Tegna, Inc., through its officers and employees, made all decisions and took all actions relevant to the instant Complaint.

Plaintiff worked at Channel 10 for almost ten years without incident, receiving various awards and not requiring any formal discipline. *Id.* ¶ 16–17. In July 2021, Plaintiff and Tegna East Coast signed a contract providing that Plaintiff would

continue working at Channel 10 for a term of three years, beginning on August 2, 2021. *Id.* ¶ 15. The contract also provided that Plaintiff could only be terminated for cause. Dkt. 1-1 at 3.

During the first part of the Covid-19 pandemic, Defendants established policies and procedures to protect against the spread of the disease, and Plaintiff complied with these requirements. *Id.* ¶18. However, when a Covid-19 vaccine became available, Defendants developed a policy requiring all employees to receive the vaccine. *Id.* ¶ 20. Defendants notified employees, including Plaintiff, of this requirement on September 13, 2021. *Id.*

Plaintiff requested an exemption from the vaccination requirement, offering to continue complying with the pre-vaccine Covid-19 policies and procedures. *Id.* ¶ 21. Plaintiff based his exemption request on a "good faith religious belief." *Id.* Allegedly, Defendants exempted other employees from the vaccine requirement. *Id.* ¶ 20. Nevertheless, Defendants denied Plaintiff's exemption request and terminated him. *Id.* ¶ 23.

Defendant, at the time in a pro se capacity, filed a charge of religious discrimination with the Equal Employment Opportunity Office ("EEOC"). Dkt. 21-1 at 2.[1] He named "WTSP-TV Tampa – Tegna" as his employer and wrote that this

[1] The Court will consider Plaintiff's Charge of Discrimination without converting the instant Motion to one for summary judgment because Plaintiff referenced the Charge in his Complaint.

employer had 101-200 employees. *Id.* After receiving his right to sue letter, Plaintiff filed the instant Complaint. Dkt. 1 ¶ 5. He brings three counts: (1) religious discrimination in violation of Title VII; (2) religious discrimination in violation of the Florida Civil Rights Act ("FCRA"); and (3) breach of his contract, for discharging him early without cause.

Defendants filed the instant Motion to Dismiss (Dkt. 14), and Plaintiff submitted a Response addressing each of its arguments (Dkt. 20). After careful consideration, the Court denies Defendants' Motion for the reasons outlined below.

**DISCUSSION**

Defendants base their Motion on three grounds. They argue that Tegna, Inc. is an improper defendant because Plaintiff did not exhaust his administrative remedies against it and, in any event, it is not Plaintiff's employer. They assert that Plaintiff fails to adequately plead religious discrimination to support his causes of action under Title VII and the FCRA. Finally, they note that Plaintiff's failure to plead religious discrimination necessarily dooms his breach of contract claim, which is based on termination without cause.

Because the FCRA is modeled after Title VII, causes of action under the two statutes are analyzed the same. *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1271

---

Dkt. 1 ¶ 5; *Equal Emp. Opportunity Comm'n v. STME, LLC*, 309 F. Supp. 3d 1207, 1210 n. 1 (M.D. Fla. 2018) (citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)).

(11th Cir. 2010). This rule applies to exhaustion requirements as well as substantive claims. *Id.*; *see also Short v. Immokalee Water & Sewer Dist.*, 165 F. Supp. 3d 1129, 1148 (M.D. Fla. 2016). Therefore, the Court will discuss these Counts together, followed by the breach of contract claim. Ultimately, the Court denies Defendants' Motion.

**I. Administrative Exhaustion and Tegna, Inc.**

Defendants argue that because Tegna, Inc. was not listed in Plaintiff's EEOC Charge, Plaintiff cannot name it as a Defendant in the instant matter. Dkt. 14 at 5–6. Defendants concede that Tegna East Coast, whom they categorize as Plaintiff's "actual employer," is named in the Charge. *Id.*

A plaintiff must exhaust his administrative remedies prior to filing suit under Title VII. *Batson v. Salvation Army*, 897 F.3d 1320, 1327 (11th Cir. 2018). However, "[g]ood faith effort by the employee to cooperate with the agency and EEOC and to provide all relevant, available information is all that exhaustion requires," *Crawford v. Babbitt*, 186 F.3d 1322, 1326 (11th Cir. 1999), and the Eleventh Circuit is "extremely reluctant to allow procedural technicalities to bar claims brought under Title VII," *Gregory v. Georgia Dept. of Human Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004). This appears to be particularly true in the case of parties who are unrepresented at the time of filing their EEOC charges. *See id.* at 1278 (emphasizing that plaintiff's EEOC charge was "filed *without the aid of counsel*").

Accordingly, the rule that only a party named in an EEOC Charge may be sued in the subsequent civil action is to be liberally construed. *Virgo v. Riviera Beach Assocs., Ltd.*, 30 F.3d 1350, 1358 (11th Cir. 1994). Courts will generally permit a claim to proceed against an unnamed party if the purposes of Title VII are met. *Id.* at 1358–59. That is, if an unnamed party is notified of the allegations and allowed the opportunity to participate in conciliation, it generally may be named in the suit. *Id.*

To determine if these purposes are met, the Eleventh Circuit has identified five non-exhaustive factors:

> (1) the similarity of interest between the named party and the unnamed party; (2) whether the plaintiff could have ascertained the identity of the unnamed party at the time the EEOC charge was filed; (3) whether the unnamed parties received adequate notice of the charges; (4) whether the unnamed parties had an adequate opportunity to participate in the reconciliation process; and (5) whether the unnamed party actually was prejudiced by its exclusion from the EEOC proceedings.

*Id.* at 1359; *see also EEOC v. Princess Martha, LLC*, --- F. Supp. 3d ---, 2023 WL 8544223, at * 5 (M.D. Fla. Dec. 11, 2023) (finding the *Virgo* factors weighed in favor of permitting claim to proceed against parent company not named in EEOC Charge). At the same time, a plaintiff "is not required to allege exhaustion of administrative remedies with specificity." *Townsend v. Hilton Worldwide, Inc.*, Case No. 8:16–CV–990–17JSS, 2016 WL 6518437, at *3 (M.D. Fla. Nov. 1, 2016) (first citing Fed. R. Civ. P. 9(c), then citing *Jackson v. Seaboard Cost Line R.R. Co.*, 678 F.2d 992, 1009–

10 (11th Cir. 1982)). And, if a defendant "disputes exhaustion, it must offer more than unsubstantiated assertions by counsel." *Id.* (citing *Tillery v. U.S. Dep't of Homeland Sec.*, 402 F. App'x 421, 424 (11th Cir. 2010)).

In in the instant matter, Plaintiff filed his EEOC Charge without the aid of counsel. Dkt. 20 at 6. He named "WTSP-TV Tampa – Tegna" as his employer. Dkt. 21-1 at 2. He appears to have made a good-faith effort to cooperate with the EEOC and to provide all relevant information that was available to him. Indeed, Defendants tacitly acknowledge as much when they concede that "WTSP-TV Tampa – Tegna" should be interpreted to reference Plaintiff's employer. Dkt. 20 at 6.

Neither party addressed the *Virgo* factors, but Plaintiff stated that Tegna, Inc. owns Channel 10, directs Tegna East Coast's operations, and is responsible for all decisions relevant to the instant matter. Dkt. 1 ¶ 12. In contrast, Defendants state that it is "clear" Tegna, Inc. wasn't named in the charge because the entity named in the EEOC Charge has "101–200 employees," while the Complaint states that Tegna, Inc. has over 500. Dkt. 14 at 6; Dkt. 1 ¶ 13. This argument rings hollow; the Complaint also alleges that Tegna East Coast has over 500 employees, yet Defendants concede that the EEOC Charge names Tegna East Coast. Dkt. 14 at 5–6.

The Complaint alleges that all conditions precedent to the filing of the action have occurred or been waived. Dkt. 1 ¶ 5. This is enough to survive a motion to dismiss. *See Jackson*, 678 F.2d at 1009. At a later stage in litigation, Defendants may

raise the *Virgo* factors if they wish (the *Virgo* factors were themselves articulated in a ruling on summary judgment). *See Alcantara v. Denny's Inc.*, No. 6:05-cv-515-Orl-22JGG, 2006 WL 8439596, at *7–8 (M.D. Fla. Jan. 19, 2006) ("Because Defendants do not address the Virgo factors, this Court is unable to determine whether dismissal is appropriate. The Court notes, however, that it is not uncommon for corporate defendants unnamed in the EEOC charge to be included in the subsequent civil suit.").

**II. Tegna, Inc. as an Employer**

Defendants further argue that Tegna, Inc. is an improper defendant because the Complaint does not state facts showing that Tegna, Inc. was Plaintiff's employer. Dkt. 14 at 7. In support, they point to the fact that Plaintiff's employment agreement is only with Tegna East Coast. *Id.* at 8.

There are several legal theories under which plaintiffs may proceed when wishing to hold more than one entity liable for a Title VII violation, including the joint employer and single employer tests. *Virgo*, 30 F.3d at 1359 n.6. Plaintiff cited to *Zaklama v. Mt. Sinai Med. Ctr.*, 842 F.2d 291 (11th Cir. 1988). *Zaklama* presents a "somewhat esoteric theory," *Wood v. Fla. Dep't. of Educ.*, --- F. Supp. 3d ---, 2024 WL 1536749, at *8 n. 11 (N.D. Fla. Apr. 9, 2024), in which a "non-employer controls, or has interfered with, an individual's employment relationship with a third party," *Turner v. Jefferson Cnty. Comm'n*, 2:18-cv-01609-JEO, 2019 WL 2435872,

*4 (N.D. Ala. June 11, 2019). "Courts have found such relationships most often with cases involving temp agencies, medical residencies, or other methods of employment where a person works for someone that places them in a location where their day to day work lives are controlled by someone else." *Id.* (collecting cases). Applying this test, courts consider whether: (1) the employee worked on the premises of the allegedly liable non-employer; (2) the control the non-employer is alleged to have exerted over the employee; and (3) whether the non-employer had the power to fire, hire, or modify the employee's conditions of employment. *Id.* (citing *Welch v. Laney*, 57 F.3d 1004, 1011 (11th Cir. 1995)).

These factors somewhat align with the more commonly applied single employer test, which examines: "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Lyes v. Riviera Beach*, 166 F.3d 1332, 1341 (11th Cir. 1999) (noting that no one factor is dispositive, and not all factors need be present to find two entities function as a single employer). Similarly, many of the same facts that may satisfy the single-employer test or *Zaklama* could support a finding that two corporations function as joint employers—that is, they each retain sufficient control over the terms and conditions of employment, such that both determine matters

governing essential terms and conditions of employment. *Virgo*, 30 F.3d at 1359–60.[2]

The Court is not convinced that *Zaklama* is a fitting theory for the facts at hand. But the facts pled in the Complaint are enough to survive a motion to dismiss, under whatever theory Plaintiff ultimately adopts. The Complaint alleges that both Defendants worked together to develop Covid-19 operating procedures and communicate those procedures to employees. Dkt. 1 ¶¶ 18, 20. Additionally, the Complaint states that both Defendants participated in the decision to refuse Plaintiff's religious exemption and terminate him. *Id.* ¶¶ 22–23. These facts adequately plead interrelated operations, centralized control, and common management. They also state that both Defendants exercised control over the terms and conditions of Plaintiff's employment, including the power to set policy and terminate Plaintiff. The Complaint adequately pleads that Tegna, Inc. is Plaintiff's employer.

## III. Religious Discrimination and Breach of Contract Claims

Plaintiff complains that Defendants discriminated against him by failing to accommodate a conflict between his bona fide religious belief and Defendants' employment requirement. Because his term-of-years employment contract provides

[2] *Virgo* adopted the National Labor Relations Board joint-employer test, which itself changes from time-to-time. The Court need not precisely define the contours of that test to resolve the instant Motion.

that he can only be terminated for cause, Plaintiff further avers that when Defendants fired him based on his religion, they breached the contract. As a result, all three Counts of the instant Complaint rise and fall with whether or not Plaintiff adequately alleged religious discrimination.

Under Title VII, it is unlawful for employers to discriminate against employees based on religion. 42 U.S.C. § 2000e-2(a). To establish a rebuttable presumption of religious discrimination based on failure to accommodate, as is alleged in the instant Complaint,[3] a plaintiff must show that: (1) he "held a bona fide religious belief that conflicted with an employment requirement"; (2) he informed his employer of that belief; and (3) he was "discharged for failing to comply with the conflicting employment requirement." *Dixon v. The Hallmark Cos., Inc.*, 627 F.3d 849, 855 (11th Cir. 2010). But to state a claim sufficient to survive a motion to dismiss, a plaintiff need only plead facts that plausibly suggest he suffered an adverse employment action due to religious discrimination. *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015); *Norris v. Honeywell Int'l Inc.*, 8:22-cv-1675-CEH-TGW, 2023 WL 6256183, *13–14 (M.D. Fla. Sept. 26, 2023)

[3] Defendants' Motion to Dismiss discusses both failure to accommodate and disparate treatment theories. Dkt. 14 at 9–12. In his Response, Plaintiff indicates that he is proceeding based on failure to accommodate. Dkt. 20 at 12–14. Therefore, the Court will only address Defendants' failure to accommodate argument.

(applying *Surtain* to claim of a religious discrimination based on failure to accommodate).

Plaintiff has stated such a claim. The Complaint states that Plaintiff had a "good faith" religious objection to the Covid-19 vaccine, which obviously conflicted with Defendants' vaccination requirement. Dkt. 1 ¶¶ 20–22. Plaintiff avers that he offered to comply with allegedly effective alternate precautions, but Defendants instead terminated him without justification. *Id.* Accepting Plaintiff's facts as true, the Court can reasonably infer that Defendants terminated Plaintiff because of his religion. This states a claim of religious discrimination sufficient to survive a motion to dismiss.

Defendants argue that Plaintiff's Title VII and FCRA claims should be dismissed because Plaintiff does not explain how his religious belief conflicts with Defendants' vaccination policy, or even say what the belief is. But neither of these arguments is convincing. First, the Complaint clearly states how Plaintiff's belief conflicts with Defendants' policy—Plaintiff alleges a religious objection to the vaccine, which Defendants required him to receive as a condition of employment. This puts Defendants on notice of their alleged conduct and, combined with Plaintiff's claim that he was terminated because of his religion, raises the right to relief above a speculative level.

Second, Plaintiff need not provide detailed facts about his religious belief at this stage. Defendants are free during discovery to seek more information in order to attack the bona fide religious nature of the belief in question. For purposes of the instant Motion, the Court must construe facts in Plaintiff's favor and assume that his belief is both sincerely held and, in his "own scheme of things, religious." *Scafidi v. B. Braun Med., Inc.*, --- F. Supp. 3d ---, 2024 WL 184258, at *7–8 (M.D. Fla. Jan. 17, 2024) (citing *U.S. v. Seeger*, 380 U.S. 163, 185 (1965) (holding on summary judgment that employee who objected to Covid-19 vaccination requirement did so on the basis of "her own purely scientific, personal, and medical beliefs about the vaccine" rather than a religious belief).

Because Plaintiff adequately alleged religious discrimination, he stated a claim for Counts I and II. Additionally, if Defendants terminated Plaintiff in violation of Title VII and the FCRA, it follows that they did not fire him for cause. Subsequently, he also stated a claim for Count III.

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that Defendant's Motion to Dismiss (Dkt. 14) is **DENIED**. **DONE** and **ORDERED** at Tampa, Florida, on April 12, 2024.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**Copies Provided To**
Counsel of Record